**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

LETTER-OPINION

November 13, 2006

Agnes S. Wladyka, Esq.
Abromson & Carey
60 Park Place, Ste. 601
Newark, NJ 07102

Sheena V. Barr, Esq.
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

      Re:    **Camara v. Commissioner of Social Security**
                  **Civil Action No.: 05-3221 (JLL)**

Dear Counsel:

      Presently before this Court is Plaintiff Maria Camara's Complaint seeking review of a final determination of the Commissioner of Social Security (hereinafter the "Commissioner") denying his application for disability and Disability Insurance Benefits under §§ 216(i) and 223 of the Social Security Act. The issue to be decided is whether the Commissioner's decision to deny Plaintiff's application for disability insurance benefits is supported by substantial evidence. The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and decides this matter after having considered the papers submitted by the parties.

      For the reasons set forth below, this Court concludes that the Commissioner's determination is supported by substantial evidence and is hereby affirmed.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on August 14, 1954 and was forty-nine years old at the time the Commissioner made its final determination. (R. 25). Although Plaintiff only has a fourth grade education obtained in Portugal, she admits to speaking, reading and understanding the English language. (R. 25-26). Since her immigration to this country, Plaintiff appears to have held two jobs - the first, as a factory worker, lasted approximately twelve years, and the second, as a home companion to an elderly woman, lasted approximately three years. (R. 27-29). As a factory worker, Plaintiff was required to lift boxes weighing 32 pounds every five minutes. (R. 31). As a result of the heavy lifting, Plaintiff suffered a back injury due to herniated disks and entered a period of disability lasting approximately 4 years, from January 1, 1992 to October 1, 1995.[1] (R. 30). When her disability benefits terminated in 1995, Plaintiff sought re-employment and chose to work as a companion because ". . . there was nothing to it. It was a very light job and [she] didn't do [any] lifting . . . ." (Id.).

As a home companion, Plaintiff worked four hours a day, five days a week preparing meals for her elderly client, accompanying her on doctor's visits and on errands, and keeping her company throughout the day. (R. 27). Plaintiff stated that she spent roughly half of her time (approximately 2 hours a day) standing while preparing meals and running errands. (R. 28). However, as her client became increasingly ill, Plaintiff's job became more physical as she was required to lift and physically help her. (R. 29). As a result of this increased physicality, Plaintiff alleges that she suffered back pain, which ultimately led her to quit her job in 2001.

In early October of 2001, Plaintiff was seen by Dr. Stephen Fischl for a cardiac evaluation of persistent leg edema and atypical chest pain and shortness of breath. (R. 184). Dr. Fischl noted that Plaintiff had arthritis in her shoulders "for which she takes an occasional Celebrex." (R. 183). Dr. Fischl scheduled Plaintiff for an echocardiogram and a venous Doppler exam, to rule out varicosities or venuous obstruction and heart disease; both exams came back normal. (R. 180-181). Furthermore, Dr. Fischl noted Plaintiff had no history of palpitations, syncope, diabetes or hypertension and her cholesterol was normal (R. 183). Plaintiff was also seen by Dr. Morton Farber in early October for "aches and pains in her shoulders and arms". (R. 154). An x-ray of her cervical spine showed "straightening due to spasm and some anterior osteophytes". (Id.). Dr. Farber recommended that Plaintiff get an MRI. He also told her to wear a collar for the time being and to take 25mg of Vioxx once a day. (Id.).

In February of 2002, Plaintiff saw Dr. Farber for follow-up care at which time she complained of aches and pains. (R. 154). Dr. Farber noted that Plaintiff had some limitation of motion of the cervical spine and some lower back ache on rotation of her hips and straight leg raising. (Id.). Although Plaintiff also complained of pain in her hands and forearms, a rheumatoid arthritis screen, ESR and C-reactive protein test taken on February 25, 2002 all came out negative.

---

[1] At Plaintiff's June 24, 2003 administrative hearing, Plaintiff stated that the injury which caused her disability in 1992, namely discomfort from herniated disks, was the same disability that she is now suffering from. (See Id.).

(R. 177).

Records from Plaintiff's physical therapy sessions at Trinitas Hospital from March 20, 2002 through April 25, 2002 reveals that Plaintiff cancelled five out of her eleven scheduled appointments, and when asked at each visit she did attend how she was feeling, repeatedly responded that her back was better or that she was in less pain in her back and right shoulder. (R. 165-169). Plaintiff discontinued her therapy in April. (R. 165).

On March 25, 2002, Plaintiff had a consultative orthopedic examination with Dr. Rashel Potashnik. (R. 188-90). Plaintiff complained that she had difficulty bending and lifting due to lower back pain, pain in her right shoulder, wrist, knuckles, legs, ankles and feet. (R. 188). Plaintiff also told Dr. Potashnik that she was diagnosed with herniated discs, however, Dr. Potashnik noted that a review of her orthopedic notes showed that she in fact had bulging discs in her cervical spine and lower back. (Id.). Dr. Potashnik also noted that Plaintiff's history of sciatica had resolved. (Id.). Upon physical examination, Dr. Potashnik noted that Plaintiff was not in acute distress and was pleasant, walked without assistance and was independent in mounting the exam table, dressing and undressing, and was also able to squat and walk on her heels and toes. (R. 189). A Patrick test to detect the presence of arthritis of the hip was negative. (R. 189). Dr. Potashnik concluded that the examination was suggestive of right shoulder arthritis/impingement syndrome, arthritis of the right hand and both knees and bilateral plantar fasciitis. (R. 190). Dr. Potashnik concluded that Plaintiff might be limited in heavy lifting, repetitive bending and overhead reaching of her right side. (Id.).

On January 13, 2004, Dr. Maryann Curiba completed a medical assessment of Plaintiff where she indicated that Plaintiff is restricted (1) to carrying and/or lifting five pounds; (2) to carrying and/or lifting less than five pounds occasionally; (3) to standing, walking and sitting for less than one hour; (3) to never stooping, crouching or crawling; and (4) to climbing, balancing or kneeling only occasionally. (R. 215-17). Although the instructions on the Medical Assessment Form required that the medical findings which support the assessment be identified, Dr. Curiba provided no such findings other than general statements that "postural changes affect[ed] her pain" and that "pain prevents her from performing her [chores] properly and distracts her." (R. 217). In addition, although Plaintiff testified at her hearing that she saw Dr. Curiba regularly at two month intervals, no medical records from Dr. Curiba were provided. (See R. 41-42). Similarly, although Plaintiff testified that Dr. Curiba told her that her damage is in her herniated disks, no medical records were provided from Dr. Curiba to support this, and the records that we do have show that Plaintiff's discs are bulging, not herniated. (See R. 42, 188).

Plaintiff applied for Social Security Disability Insurance Benefits on February 11, 2002, alleging a period of disability since December 31, 2001 due to five herniated disks. (R. 14). The claim was denied both initially and on reconsideration. On June 5, 2002, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was granted. On June 24, 2003, Plaintiff appeared and testified before the Honorable Dennis O'Leary, the Administrative Law Judge assigned to her petition. On February 27, 2004, ALJ O'Leary decided that Plaintiff was not disabled within the meaning of the Social Security Act and denied her claim. Plaintiff appealed the decision to the Administration's Appeals Counsel, but her appeal was subsequently denied. The decision of the ALJ, now a final agency action, is reviewable by this Court under 42 U.S.C. § 405(g).

Specifically, with regard to finding three, the ALJ stated:

> Regarding the third evaluation step, the claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations. . . . No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Particular scrutiny was given to the claimant's condition in light of Listing 1.00, the Musculoskeletal System.

(R. 15).

With regard to finding four, the ALJ stated:

> In her former job as a home companion, the claimant was not required to do any lifting, or stand and/or walk for prolonged periods of time. The impartial vocational expert testified that, based upon claimant's residual functional capacity, she could return to her past relevant work as a home companion as previously performed. . . . [The vocational expert] further testified that the job of home companion is performed at different exertional levels . . . . Consequently, I accept his expert testimony that the claimant can perform her past relevant work as she actually performed it.

(R. 18).

The ALJ also found Plaintiff's subjective complaints of disabling pain and other symptoms and limitations to be not credible. (R. 17-18). In addition, the ALJ accorded minimal weight to the medical assessment provided by the treating physician, Dr. Curiba, because it was "not consistent with the other substantial evidence of record." (R. 18). The ALJ noted that Dr. Curiba provided no explanation for her conclusions and her overall assessment of Plaintiff was "unpersuasive in light of the medical and other evidence in the record." (Id.).

At steps four and five, the ALJ found that the Plaintiff "retains the residual functional capacity to perform the exertional demands of sedentary work, not requiring the lifting of her right arm over her head, or the use of her right arm for continuous, repetitive movements." (R. 19). The ALJ stated that since Plaintiff's past job as a home companion did not require her to do any lifting, or standing/walking for prolonged periods of time, Plaintiff could perform her past relevant work as previously performed and therefore was not disabled. (R. 18-19).

## **LEGAL STANDARDS**
### A.      **Disability Defined**

Under the Social Security Act, a claimant must demonstrate that he is disabled based on an "inability to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Social Security Regulations set forth the following five-step, sequential evaluation procedure to determine whether a claimant is disabled:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow:
>
> (I) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (See paragraph (f) of this section and § 404.1560(b).)

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 404.1560(c).)

20 C.F.R. § 404.1520(a)(4).

### B.     Burdens of Proof

The five-step sequential evaluation involves shifting burdens of proofs. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant has the burden of establishing at step one that he has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant establishes these initial burdens, he must next demonstrate, at step three, that his impairment is equal to or exceeds one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If he makes this showing then he is presumed disabled. If he cannot show this, then at step four he must show that his residual functioning capacity ("RFC") does not permit him to return to his previous line of work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then in the final step, step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). Note that the burden only shifts to the Commissioner at step five; throughout steps one through four the burden lies entirely with the claimant. However, if the Commissioner cannot meet this burden, the claimant shall receive benefits. "For each of the first four prongs, a finding of 'not disabled' will end the inquiry; otherwise the inquiry will proceed to the next level." Alexander v. Shalala, 927 F. Supp. 785, 792 n. 4 (D.N.J. 1995).

### C.     Standard of Review

The main issue before this Court is whether the ALJ's determination to deny disability benefits is supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is more than a "mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence may be slightly less that a preponderance. Hanusiewicz v. Bowen, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court has a duty to review the evidence in its totality and reviews whether the Commissioner's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The Commissioner has a duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, [he] must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F.Supp. 273, 278 (M.D. Pa.

1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The reviewing court gives deference to the administrative decision, but the court has a duty nonetheless to scrutinize the entire record to determine whether the ALJ's findings are rational and supported by substantial evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  The district court however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

## DISCUSSION

The Court begins the five-step process to determine whether a plaintiff is disabled by first determining if the plaintiff has established that he or she is presently not working.  20 C.F.R. § 404.1520.  The ALJ's finding that the Plaintiff was not employed is not in dispute.

Steps two and three require analysis of similar facts and issues, therefore they may be analyzed together.  In the second step, the ALJ determines whether the plaintiff suffers from a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If so, the ALJ must determine if the plaintiff's impairment can be found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1.  In the third step, if the impairment is found to be one of those listed, or is found to be the equivalent of a listed impairment, the plaintiff is automatically deemed disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, Plaintiff challenges the ALJ's findings at step three for several reasons.  First, she argues that the ALJ failed to give credence to her subjective complaints. (Pl. Br. at. 9).  Second, she argues that the ALJ improperly made the conclusory statement that Plaintiff did not meet a Listed Impairment without providing a thorough discussion of the evidence. (Id. at13-14).  She argues that the ALJ did not discuss the combination of Plaintiff's medical conditions and whether they would meet or equal a listing when considered in combination. (Id.).  Lastly, Plaintiff argues that the ALJ erred in finding that she can perform her past relevant work and failed to support with substantial evidence his determination that she retains the residual functional capacity to perform sedentary work. (Id. at 15).

The Court first turns to Plaintiff's argument that the ALJ failed to give credence to Plaintiff's subjective complaints of debilitating pain.  "A reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness." Izzo v. Comm'r of Soc. Sec., 2006 U.S. App. LEXIS 16282, *15 (3d Cir. 2006) (citing to Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003)).  An ALJ is required to give significant weight to a claimant's subjective complaints only when they are supported by competent medical evidence. Id. (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999)).  Here, the ALJ determined that Plaintiff's subjective allegations regarding her impairments were not entirely credible in light of her medical reports.  The ALJ reviewed the medical reports demonstrating that Plaintiff had "reduced range of motion of the cervical spine and impingement of the right shoulder, but no radicular findings on examination of the upper extremities." (R. 17).  Similarly, the ALJ noted that Plaintiff's muscle strength was good in all extremities, and although there was evidence

of multiple bulging cervical discs, there was no evidence of cord compression or impingement. (R. 17-18). Similarly, a review of the record demonstrates that Plaintiff is able to walk, dress and undress without assistance, does not suffer from cardiovascular illness or arthritis, and her condition improved so significantly, that she was able to cancel her physical therapy treatments. (R. 154-90).

Furthermore, in addition to the medical evidence, the ALJ may consider the following factors in deciding the Plaintiff's credibility: (1) daily activities; (2) duration, location, frequency, and intensity of the pain and other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pain or other symptoms; (5) treatment other than medication; (6) any other measure used to relieve the symptoms; and (7) other factors concerning functional limitations or limitations due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii). Here, an examination of these factors establishes that Plaintiff (1) was not on any continuing medication, other than the occasional Vioxx; (2) discontinued her physical therapy and missed a large number of appointments; and (3) disclosed numerous times that she was feeling better and that her condition had improved. In considering the medical evidence and these additional factors, the ALJ concluded that, "while it is not doubted that Ms. Camara may experience some degree of back and right shoulder discomfort, the evidence of record fails to support the degree of virtual incapacitation alleged by the claimant." (R. 18). As a result, this Court determines that substantial evidence supports the ALJ's findings with respect to Plaintiff's subjective complaints.

The Court now turns to Plaintiff's argument that the ALJ made a conclusory statement that the medical severity of Plaintiff's impairments did not meet a Listed Impairment without providing a thorough discussion of the evidence. Plaintiff is correct in arguing that it is insufficient for the ALJ to merely conclude that the medical evidence falls short of a Listed Impairment without discussing why the evidence provided by the claimant was not equivalent. See Rivera v. Comm'r of Soc. Sec., 164 Fed. Appx. 260, 262-263 (3d Cir. 2006). Similarly, the Court agrees that the ALJ did not perform as thorough an analysis as he could have in making his Step Three determination. However, the Court finds that his error was harmless because the Court is able to juxtapose his recitation of the evidence and compare it with his conclusions. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (holding that a particular format or language is not required, instead the ALJ must only provide a "sufficient development of the record and explanation of findings to permit meaningful review"). Similarly, the ALJ sufficiently developed the record to ensure that this court had enough facts to perform meaningful review, even if he did not provide explicit analysis. In Rivera, the Third Circuit recently held that although an ALJ's conclusory statement is insufficient to satisfy a substantial evidence standard when unsupported by record evidence; it is harmless error, not meriting remand, if supported by abundant record evidence and comparatively little contradictory evidence. See Rivera, 164 Fed. Appx. at 262-263.

Here, the ALJ stated that he reviewed Plaintiff's impairments in light of Listing 1.00, the Musculoskeletal System which "delineates the factors and standards for interpreting evidence submitted on disability claims relating to musculoskeletal disorders, the very complaints that [made by Claimant]." See 20 C.F.R. pt. 404, app. 1 § 1.00. Although the ALJ failed to adhere to any specific format or language, in providing this statement he referred the Court's attention to Listing

1.00 and the Court was able to juxtapose Plaintiff's medical condition with the factors and standards which accompany it. See Rivera,164 Fed. Appx. at 263. Furthermore, the record substantially supports the ALJ's determination at Step Three. A review of the medical records from Drs. Fischl, Farber and Patashnik fail to establish any serious impairment or complication that could give rise to the degree of pain Plaintiff contends she suffers. Similarly, Dr. Curiba, Plaintiff's treating physician, fails to provide any medical records or explanations in support of her findings on the medical assessment report; instead, Dr. Curiba merely filled in some boxes.

In conclusion, this Court finds that the ALJ's finding at Step Three, that the medical severity of Plaintiff's impairments did not meet or equal a Listed Impairment, is supported by substantial evidence. While the ALJ should have been more thorough in his analysis, his failure to do so was harmless since there is substantial evidence in the record in support of his determination, and relatively little evidence to contradict it. In addition, under the specific circumstances of this case, his failure to provide explicit analysis for his determination did not preclude this Court's ability to provide meaningful judicial review.

Under the fourth step, Plaintiff will be found "not disabled" if she can still perform work she did in the past, despite a severe impairment, in light of her residual functional capacity. See 20 C.F.R. § 404.1520(a)(4)(iv). The claimant has the burden at Step Four of establishing that she is disabled and unable to return to her past relevant work. Id.

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.

Plaintiff first argues that the ALJ's determination that she retains the residual functional capacity for sedentary work, not requiring her to lift her right arm over her head or use her right arm for continuous repetitive movements, is speculative and unsupported by the evidence. (Pl. Br. at 15-16). The Regulations define sedentary work, as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required

occasionally and other sedentary criteria are met.

20 CFR 404.1567(a).

An examination of the record establishes that objective medical evidence supports the ALJ's determination that Plaintiff has the residual functional capacity to perform sedentary work:

> [C]laimant's statements regarding her impairments and their impact on her ability to work are not entirely credible. Despite the claimant's complaints of debilitating pain, the objective medical evidence of record fails to support such contentions. The only limitations indicated by Dr. Potashnik are his findings against lifting heavy objects, repetitive bending, and overhead reaching of the right upper extremity. Specifically, his examination revealed reduced range of motion of the cervical spine and impingement of the right shoulder, but no radicular findings on examination of the upper extremities . . . . . The undersigned is aware of the restrictive residual functional capacity assessment by Dr. Curiba . . . and accords it no significant weight. Dr. Curiba's findings are not consistent with the other substantial evidence of record. Moreover, Dr. Curiba provides no adequate explanation for her conclusions . . . . [C]ontrolling weight need not be given to a treating source's opinion where, such as here, the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques.

(R. 17-18).

Furthermore, as stated in this Court's credibility analysis above, the records of Plaintiff's examining physicians fail to establish any cardiac or arthritic complications that would impinge Plaintiff's ability to perform sedentary work. (R. 154-90). In addition, regarding the physical demands of Plaintiff's past relevant work as a companion, Plaintiff herself testified that the reason she chose to work as a companion <u>after</u> her prior disability (which, she herself testified was "the same thing [she has] now"), was because "there was nothing to it. It was a very light job and I didn't do no lifting and I wanted to do something." (R. 30). On this record, it was reasonable for the ALJ to conclude that Plaintiff could perform the requirements of her past relevant work.

Plaintiff next contends that the ALJ relied on the erroneous testimony of vocational expert, Rocco Meola, and as a result of this reliance, erroneously concluded that Plaintiff could work as a "home health aide" or "companion", which have the exertional limits of "medium" and "light", respectively under the Dictionary of Occupational Titles; when the ALJ in fact found Plaintiff's residual functional capacity to be only "sedentary." (Pl. Br. at 17). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." <u>Burnett</u>, 220 F.3d at 123. The ALJ is required to evaluate

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

Id. (citing 1982 SSR LEXIS 27, S.S.R. 82-62).

Although the ALJ considered Mr. Meola's testimony, his testimony was corroborative only and not determinative on its own. Furthermore, the ALJ had substantial evidence on the record to support his determination that Plaintiff retained the residual functional capacity to perform her prior work as she actually performed it, without even considering Mr. Meola's testimony dealing with how the companion job was generally performed in the national economy. Plaintiff testified that her companion job required her to do no lifting and that the physical requirements of the job, overall, were relatively light. (R. 27-30). Furthermore, it appears that up until her client became ill, Plaintiff was able to perform her past relevant work with no physical complications; it wasn't until she was required to physically assist her client that Plaintiff suffered physical distress. (Id.). In addition, the ALJ considered Mr. Meola's testimony that the companion job was performed at different exertional levels in the national economy. (R. 18). This testimony was corroborated by the fact that Plaintiff previously performed the companion job at a very light exertional level, as expressed in her testimony. (R. 27-30). As a result, this Court finds that the ALJ's determination that Plaintiff retained the residual functional capacity to perform sedentary work is supported by substantial evidence.

For the reasons discussed above, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act was supported by substantial evidence. The decision of the Commissioner is hereby affirmed.

An appropriate order accompanies this Opinion.

DATED: November 13, 2006                     /s/ Jose L. Linares
                                             JOSE L. LINARES,
                                             UNITED STATES DISTRICT JUDGE